UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**THE CIMARRON GROUP INC.,**

Debtor.

Case No. **15-60468-7**

# MEMORANDUM of DECISION

At Butte in said District this 26th day of January, 2016.

In this Chapter 7 bankruptcy, after due notice, a hearing was held January 5, 2016, in Butte on the Debtor's Amended Objection to Proof of Claim No. 14 filed by Joe A. Kissock and Kissock Realty, Inc. (collectively "Kissock"). James A. Patten of Billings, Montana appeared at the hearing on behalf of the Debtor, and Bernard J. "Ben" Everett of Anaconda, Montana appeared at the hearing on behalf of Kissock. Ken Burningham ("Burningham"), Debtor's owner and President, testified, and Debtor's Exhibits 1 through 11 were admitted into evidence without objection. After the parties completed their cases-in-chief, the Court granted the parties time to file post-hearing briefs. Debtor filed its post-hearing brief on January 15, 20156. Kissock did not file an optional reply.[1] After review of the Debtor's post-hearing briefs, the Debtor's Objection, Kissock's Proof of Claim No. 14, and the record, for the reasons set forth below, this Court sustains Debtor's Objection and disallows Proof of Claim No. 14.

---

[1] Kissock also did not file a written response to Debtor's objection. The only documents filed by Kissock were a witness list, an affidavit of Joe A. Kissock and an amended affidavit of Joe A. Kissock. Joe A. Kissock was listed as a witness on Kissock's witness list, but did not testify.

1

## JURISDICTION

This Court has exclusive jurisdiction of this bankruptcy case under 28 U.S.C. § 1334(a). Allowance or disallowance of Kissock's claim against the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(b).

## FACTS

Debtor's primary asset is the Copper King Hotel located in Butte, Montana. Debtor purchased the Hotel in November of 2005. On November 17, 2008, Debtor entered into a Standard Commercial Listing Contract ("Listing Contract") with Kissock Realty, Inc., seeking to sell the Hotel for $6 million. Included in the Listing Contract was Montana All Beverage Liquor License #01-701-8097-02. The Listing Contract expired at midnight on November 17, 2009, but contained a provision that "[w]ithin 220 days of the termination of this agreement (hereinafter protection period), if Seller enters into an agreement to or does sell, exchange, convey, lease, or rent the property to any party to whom Broker or any cooperating broker has marketed the property, the commission shall be payable at the time such agreement is entered into." Exhibit 1. The Listing Contract also contained the following language:

> Broker is employed to find a Buyer ready and willing to acquire the property described above at the price and terms stated above or at such other price and terms as Seller accepts. Broker is authorized to accept a deposit on the purchase price. Seller agrees to pay Broker in case a commission equal to 10.000% based upon the sales price . . ., if Seller enters into a written agreement for the sale of the property during the term of this agreement. . . In the event the Seller enters into a lease or rental agreement during the term of this agreement, Seller agrees to pay Broker, in cash, a commission equal to 10.000 %, based on the listed price, which commission shall be payable immediately to Broker.
>
> * * *
>
> Seller's acceptance of an agreement to sell and purchase containing contingencies

> shall not entitle the Broker to a commission unless or until the contingencies have been removed, or unless the Seller breaches the agreement.
>
> \* \* \*
>
> SELLER FURTHER CERTIFIES THAT IT HAS BEEN CALLED TO SELLER'S ATTENTION AND SELLER UNDERSTANDS THAT IF SELLER CONVEYS ANY FEE OR LEASEHOLD INTEREST IN THE PROPERTY DURING THE TERM OF THIS LISTING OR IF SELLER REVOKES THE UNDERSIGNED BROKER'S EXCLUSIVE RIGHT TO SELL, SELLER WILL PAY THE ABOVE STATED COMMISSION.

Debtor argues, without dispute, that Kissock completed the Listing Contract and presented it to Debtor for execution.

On March 13, 2010, Debtor entered into a "Purchase and Sale Agreement for Liquor License" agreeing to sell its liquor license to Bryan Scott of Kalispell, Montana for $50,000. Exhibit 4. On that same date, Debtor, entered into an "Agreement" to sell the Hotel to Butte Hospitality Company, Inc. for the sum of $4,450,000. Exhibit 5. Debtor has not operated the Hotel since 2008, and was not operating the Hotel when it entered into the sale agreements with Bryan Scott and Butte Hospitality. Bryan Scott and Debtor agreed that Kissock could act as a dual agent, representing both parties in the above sales transactions.

The Agreement identifies Debtor as the "Seller" and Butte Hospitality as the "Buyer," and except for one instance in paragraph 9, which refers to "Lessees," refers to the parties as Seller and Buyer. The recitals of the Agreement provide as follow:

> a. Seller owns certain real property, equipment and other tangible and intangible property described in the Purchase and Sale Agreement, attached hereto and incorporated herein (collectively, the "Assets");
>
> b. Seller has agreed to assign, sell and transfer to Buyer all of its right, title and interest in and to Assets, and Buyer has agreed to purchase and accept assignment of the Assets;

3

>       c.   Buyer is pursuing financing through the Montana Community Development Corporation, which may take up to three months to be approved and finalized; and
>
>       d.   Buyer wishes to begin operation of the Assets on or before March 1, 2010, and Seller is willing to allow Buyer to do so, subject to the terms and conditions of this Agreement.

Consistent with the recitals, the Agreement contained a lease provision in paragraph 2. Burningham explained that in order for Butte Hospitality to secure financing from the Montana Community Development Corporation, the Hotel had to be operating. Because Debtor was not operating the Hotel in March of 2010, Debtor, as Seller, agreed "to lease the Assets to Buyer and Buyer agree[d] to lease the Assets from Seller." According to the Agreement, Butte Hospitality, as Buyer, agreed to pay monthly rent of $19,937.50. Butte Hospitality agreed that if it could not secure financing from the Montana Community Development Corporation, that it would, within six months, execute various seller-financing documents, including a promissory note, a trust indenture, and a guarantee. Unless extended, the Agreement was to expire on June 30, 2010, after which date Butte Hospitality was to surrender the Hotel back to Debtor. The Agreement also provided that:

> Buyer shall neither remove any Assets, add any fixtures to the Assets, make any improvements to the Assets nor make any contracts therefore without the Seller's written consent, which the Seller may withhold for any reason. Buyer shall not erect, install, or place signs on the Premises without the written consent to the Seller, which consent shall not be unreasonably withheld.

Between March 13, 2010, and June 30, 2010, Butte Hospitality occupied and operated the Hotel, but Butte Hospitality did not secure financing for the purchase of the Hotel from Montana Community Development Corporation by the date the Agreement expired on June 30, 2010. Burningham testified that Debtor and Butte Hospitality extended the closing date to July 31,

2010, but that extension agreement is not in the record.

The July 31, 2010, extension date expired, and Butte Hospitality still had not secured financing for its purchase of the Hotel. Consequently, on August 1, 2010, Debtor and Butte Hospitality entered into a "Lease" whereby Debtor leased its real property, equipment and other tangible and intangible property to Butte Hospitality for a period of three months, or until October 31, 2010. Exhibit 7. The recitals of the Lease read, in part:

> b. Seller has agreed to assign, sell and transfer to Buyer all of its right, title and interest in and to Assets, and Buyer has agreed to purchase and accept assignment of the Assets;
>
> c. Buyer has been pursuing various financing options;
>
> d. Because Buyer wanted to begin operation of the Assets on or before March 1, 2010, and Seller was willing to allow Buyer to do so, the Parties entered into a leasing arrangement whereby Buyer leased the Assets from Seller, in documents titled Agreement, dated March 13, 2010 and Amendment No. 1 to Agreement, made effective June 30, 2010. The lease term expired on July 31, 2010 and the Parties with [sic] to continue the lease arrangement on the terms and conditions stated herein.

The Lease expired, without Butte Hospitality having secured any type of financing, and without Butte Hospitality following through with the alternative seller financing arrangement. Debtor hired an attorney who provided to Bryan Scott and Butte Hospitality on March 15, 2011, a "Notice of default - Copper King Hotel and Convention Center purchase and sale." Additional letters were sent by Debtor's counsel to Butte Hospitality's counsel on May 31, 2011, and June 1, 2011. Debtor eventually obtained possession of the Hotel on or about June 4, 2011, and operated the Hotel until January of 2014, when the Hotel was once again closed.

Debtor filed a voluntary Chapter 7 bankruptcy petition on May 21, 2015. Kissock filed its Proof of Claim No. 14 on September 16, 2015, asserting an unsecured claim of $912,492.88

5

stemming from "Breach of commercial real estate listing agreement entered into on 11/17/2008 - litigation is pending MT Second Judicial Dist.CT. Silver Bow Co. Cause No. DV 13 306BN." The commercial real estate listing agreement is not attached to Kissock's claim. In fact, the only attachment to Kissock's claim is a calculation of interest, identifying the underlying debt as $600,000 with the balance of $312,492.88 representing interest from March 14, 2010, through May 21, 2015. Debtor objects to Kissock's Proof of Claim arguing that the sale to Bryan Scott and Butte Hospitality did not close and that as a result, Kissock is not entitled to his real estate commission. Counsel for Kissock argued at the hearing that Kissock is entitled to a 10% commission on the $6 million listing price of the Hotel because Debtor leased the Hotel to Butte Hospitality within 220 days following expiration of the Listing Contract.

## APPLICABLE LAW and DISCUSSION

The law on objections and allowance of claims is well settled in the Ninth Circuit and this Court. A timely proof of claim, filed in accordance with Rule 3001, constitutes *prima facie* evidence of the validity and amount of the claim. 11 U.S.C. § 502(a); Rule 3001(f). The party objecting to the allowance of a claim bears the burden "to produce evidence sufficient to negate the *prima facie* validity of the filed claim. If the objector produces evidence sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the claimant to demonstrate by preponderance of the evidence that the claim deserves to share in the distribution of the debtor's assets." *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (9th Cir. BAP 1993) (citing *In re Allegheny Int'l, Inc*. 954 F.2d 167, 173 (3rd Cir. 1992)).

In the case of *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont. 2001), this Court discussed the applicable law governing the burden of proof for allowance of claims:

6

> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. KING, COLLIER ON BANKRUPTCY § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consol. Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.
>
> * * * *
>
> "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.
>
> *See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Found.*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

The analysis was reiterated by the Ninth Circuit in *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002). Applying this analysis to the instant case, Debtor's Objection to Kissock's Proof of Claim No. 14 must be sustained.

First, Kissock failed to attach any supporting documentation to its Proof of Claim as required by FED.R.BANKR.P. 3001(c). Thus, Kissock's claim is not entitled to the *prima facie* evidentiary effect afforded by Rule 3001(f); Kissock must prove the validity of its claim by a preponderance of the evidence. *In re Allegheny Int'l, Inc.* 954 F.2d at 173-74. Kissock has not sustained its burden.

It is well-established law in Montana that a broker's right to recover a commission is

7

conditioned on the broker's ability to accomplish that which he or she undertook to do in the contract of employment. *Diehl and Assocs., Inc. v. Houtchens*, 173 Mont. 372, 567 P.2d 930 (1977). A broker, such as Kissock, is not entitled to a selling commission until her or she procures "a purchaser ready, able, and willing to purchase the seller's property on the terms and conditions specified in the contract of employment." *Prop. Brokers, Inc. v. Loyning*, 201 Mont. 309, 310, 654 P.2d 521, 522 (1982). Generally, such rule "mean[s] that a broker employed to 'sell or effect a sale' (as is the case here) does not earn his commission until the purchase price is paid, title is conveyed and the sale completed." *Id.* Here, the sale to Butte Hospitality did not close and Kissock is not claiming a right to a selling commission, nor could it under Montana law or the Listing Contract, which specifically provides that "Seller's acceptance of an agreement to sell and purchase containing contingencies shall not entitle the Broker to a commission unless or until the contingencies have been removed, or unless the Seller breaches the agreement."

Kissock is also deemed to concede, through his and its silence, that the March 13, 2010 Agreement between Debtor and Butte Hospitality is first and foremost a purchase and sale agreement with contingencies. Indeed, when all agreements between the parties are taken together, as they must be under MONT. CODE ANN. ("MCA") § 28-3-203, it is clear the transaction between these parties was a purchase and sale agreement. Similarly, Kissock does not argue that Debtor entered into a stand alone lease for the Hotel or that the Agreement is a lease with an option to purchase. Rather, Kissock's sole argument is that it is entitled to a ten percent commission because under the Agreement, which is clearly a purchase and sale agreement, the Buyer, Butte Hospitality, was permitted to take possession of the Hotel and operate it for a three and one-half month period in furtherance of Butte Hospitality's efforts to secure financing from

the Montana Community Development Corporation.

The unique factual situation in this case spotlights the ambiguity in the Listing Contract, which provides for a ten percent commission based on the listing price in the event Debtor leases the Hotel and also provides that Kissock is not entitled to a commission "unless or until the contingencies [of an agreement to sell and purchase] have been removed[.]"[2] The contingencies in the March 13, 2010 Agreement were not removed, the sale did not close, and Debtor ultimately took repossession of the Hotel.

If the language of a contract is ambiguous, as this Court finds it is, a factual determination must be made as to the parties' intent in entering into the contract. *In re Marriage of Mease*, 320 Mont. 229, 237, 92 P.3d 1148, 1153 (2004); *Klawitter v. Dettmann*, 268 Mont. 275, 281, 886 P.2d 416, 420 (1994). "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." MCA § 28-3-301; *accord* MCA § 1-4-103 ("In the construction of an instrument, the intention of the parties is to be pursued if possible.") The mutual intention of the parties, in turn, is to be ascertained from the writing if possible. MCA § 28-3-303 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter.") When ascertaining

---

[2] As noted by Debtor, taking Kissock's position to its logical conclusion, and assuming for sake of argument that the sale to Butte Hospitality had closed, Kissock would have arguably earned not only the selling commission of $450,000, but also a lease commission of $600,000, for a total of $1,050,000 on a $4,500,000 sale. Such interpretation is repugnant. *See* MCA § 28-3-204 ("Repugnancies in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract.") This clearly could not be what either Kissock or Debtor intended when they entered into the Listing Contract on November 17, 2008.

the parties' mutual intention, evidence of the circumstances under which the contract was made and the matter to which it relates may be considered. MCA § 28-3-402 ("A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."); MCA § 28-2-905(2) ("[The parol evidence rule] does not exclude other evidence of the circumstances under which the agreement was made or to which it relates.").

As previously mentioned, Debtor did not enter into a stand alone lease with Butte Hospitality, which would have arguably triggered the lease commission referenced in the Agreement, and did not enter into lease with an option to purchase with Butte Hospitality. Debtor hired Kissock to sell or effect a sale of the Hotel. Kissock found a buyer for the Hotel, but unfortunately for Debtor and Kissock, the buyer was not ready, able, and willing to purchase the Debtor's property; the purchase price was never paid, title was never conveyed and the sale was not completed. Butte Hospitality's three and one-half month possession of the Hotel under the terms of the Agreement did not trigger Kissock's right to a commission.

For the reasons discussed above,

IT IS ORDERED that the Court will enter a separate Order sustaining Debtor's objection to Proof of Claim No. 14, and disallowing Kissock's Proof of Claim No. 14.

/s/ Ralph B. Kirscher
Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge